Toby J. Marshall, WSBA #32726
Adrienne D. McEntee, WSBA #34061
Attorneys for Plaintiff and the Proposed Class
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450
Email: tmarshall@terrellmarshall.com
Email: amcentee@terrellmarshall.com

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARTIN BANDY,<br><br>                    Plaintiff,<br><br>        v.<br><br>ALLIANCE FOR SHARED HEALTH, INC.,<br>and CHRISTIAN DISCOUNT ALLIANCE,<br>LLC d/b/a SHARED HEALTH ALLIANCE,<br><br>                    Defendants. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

## I.    INTRODUCTION

1.    This is a class action brought on behalf of individuals who acquired

healthcare plans from or through Defendants Alliance for Shared Health, Inc., or

Christian Discount Alliance, LLC d/b/a Shared Health Alliance. Defendants

CLASS ACTION COMPLAINT - 1

1    marketed and sold unauthorized health insurance plans in Washington. The plans

2    provided for certain healthcare payment benefits in the event of specified health-

3    related contingencies in exchange for a monthly payment. The benefit amount

4    was tied to the amount of the monthly payment and the cost incurred by the

5    customer for health-related medical treatments. This arrangement meets the

6    definition of "insurance" under Washington statute RCW 48.01.040.

7         2.    Washington requires companies selling insurance to first obtain a

8    certificate of authority from the insurance commissioner. Washington's insurance

9    commissioner has never issued certificates of authority to Defendants. As such,

10   Defendants' insurance plans were unauthorized. Moreover, the unauthorized

11   insurance plans Defendants marketed and sold did not meet the minimum

12   benefits, coverage, and other requirements for health insurance under the

13   Affordable Care Act (ACA) and in Washington. They are illegal contracts.

14        3.    Defendants not only marketed and sold illegal insurance plans in

15   Washington but also represented the plans were offered from a Health Care

16   Sharing Ministry (HCSM). This representation was misleading, unfair and/or

17   deceptive. At no time did Defendants' plans meet the requirements for HCSMs

18   under Washington or federal law.

19

20

CLASS ACTION COMPLAINT - 2

1      4.      Plaintiff Martin Bandy, on behalf of himself and all others similarly

2   situated in Washington, alleges that Defendants' deceptive and unfair practices

3   violated the Washington Consumer Protection Act (CPA), chapter 19.86 RCW. He

4   seeks actual damages related to uncovered health care expenses, premiums paid

5   and other losses due to Defendants' marketing and sale of unauthorized health

6   insurance plans, treble damages, interest, attorneys' fees, and costs, and any

7   other relief that the Court deems proper, on behalf of himself and all other

8   consumers injured by Defendants' illegal practices.

9                          II.      JURISDICTION AND VENUE

10      5.      The Court has jurisdiction over this case under 28 U.S.C. § 1332(d)(2)

11  because the matter in controversy exceeds $5,000,000, exclusive of interest and

12  costs, and is a class action in which the named Plaintiff is a citizen of a State

13  different from at least one of the Defendants.

14      6.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part

15  of the events or omissions giving rise to Plaintiff's claims occurred in the district

16  and the named Plaintiff resides in the district.

17                                III.      PARTIES

18      7.      Plaintiff Martin Bandy is a citizen of Washington and a resident of

19  Entiat, Washington, which is in Chelan County. Mr. Bandy was enrolled in a

20

CLASS ACTION COMPLAINT - 3

1    healthcare plan through Alliance for Shared Health/Shared Health Alliance at all

2    times relevant to this Complaint.

3          8.      Defendant Alliance for Shared Health, Inc. (ASH), formerly known as

4    Island Healthcare, Inc., was formed in the U.S. Virgin Islands as a domestic

5    nonprofit corporation. The IRS afforded the company 501(c)(3) status on March

6    19, 2019, and on September 3, 2019, ASH became authorized as a foreign

7    nonprofit corporation with the Missouri Secretary of State. At all relevant times,

8    Defendant ASH did business in Washington.

9          9.      Defendant Christian Discount Alliance, LLC d/b/a Shared Health

10   Alliance (SHA) is a limited liability company formed in Missouri. At all relevant

11   times, Defendant SHA did business in Washington.

12         10.     Defendants represented ASH as a Health Care Sharing Ministry, or

13   HCSM, even though ASH has not been in existence continuously since December

14   31, 1999, as required by 26 U.S.C. § 5000A and RCW 48.43.009.

15         11.     SHA is an insurance producer that markets and sells insurance plans

16   for ASH.

17         12.     Neither ASH nor SHA is authorized or licensed to provide any type of

18   insurance plan in Washington.

19

20

CLASS ACTION COMPLAINT - 4

1

## IV.    STATEMENT OF FACTS

2

<u>Defendants marketed and sold health insurance plans</u>.

3    13.    In January 2019, ASH began to offer healthcare plans to Plaintiff and

4    class members in Washington.

5    14.    SHA recruited brokers to sell ASH's healthcare plans, luring them

6    with the opportunity to "get paid an equitable compensation on a residual basis"

7    while "solving your clients' health insurance needs."

8    15.    ASH and SHA worked in concert to market and sell the plans. The

9    documents and program materials found on SHA's website contained both the

10    ASH and SHA logos and names, with links to purchase the healthcare plans.

11    16.    ASH paid SHA a vendor consulting fee to market and sell ASH's plans.

12    SHA was also paid through add-on products members could choose, including lab

13    discounts from Fair Price Labs, prescription advocacy from SHA's own SHARx

14    program, and Virtual Primary Care from two different entities, www.1800md.com

15    and www.sherpaa.com.

16    17.    Defendants charged "members" a "monthly contribution" to

17    participate in the healthcare plans Defendants marketed and sold in Washington.

18    18.    The amount charged was based on the medical plan selected by the

19    insured. Defendants offered more than a dozen plans, from "basic" and

20

CLASS ACTION COMPLAINT - 5

"preventative" to "max" and "premier." The plans required members to pay a deductible, which Defendants call a "Member Responsibility Amount," or "MRA." Once this amount was paid, then medical bills were to be paid in accordance with membership guidelines for the selected plan.

19.     The plans at the higher levels cost more and ostensibly provided more robust benefits for covered medical conditions. The guidelines warned members to "[m]ake your choice wisely, because different programs offer different levels of health cost sharing support."

20.     The plans purported to provide coverage for medical expenses. Among other things, the plans were to cover primary care visits, specialist visits, hospitalization, prescription drugs, preventive care, and urgent care.

21.     Upon enrolling, Defendants issued ID cards to members. The membership ID cards looked and functioned like an insurance ID card. In fact, the guidelines directed members to "[g]ive providers your ASH membership card if they ask for proof of insurance."

22.     The plans also included established preferred provider or PPO networks through which members could seek care.

23.     Healthcare payments were to be made for members who were current on their monthly payments in the event they experience a covered loss,

had met their deductible or "Member Responsibility Amount" or "MRA," and otherwise met the coverage requirements set forth in the guidelines.

24.    Under the plans, Defendants made payments for covered losses directly to providers.

25.    Defendants had the right to "automatically cancel" a membership if an individual did not pay the monthly fee. Additionally, if an individual's membership was delinquent, Defendants would not "share" in the payment of any medical bills the individual submitted until the individual's membership account had no balance owing.

26.    The plans Defendants sold to Washington consumers were contracts through which Defendants undertook to indemnify a member upon the occurrence of determinable contingencies and agreed to pay specified amounts upon determinable contingencies. These contracts constitute "insurance" as defined by Washington law. RCW 48.01.040. Defendants were therefore required to comply with the laws in Washington that govern insurers.

27.    Washington requires companies selling insurance to first obtain a certificate of authority from the insurance commissioner. Washington's insurance commissioner has never issued certificates of authority to Defendants.

CLASS ACTION COMPLAINT - 7

1

<u>Defendants' plans failed to comply with ACA and state insurance requirements for minimum benefits and coverage</u>.

2

3

28.    The Affordable Care Act requires health plans offered in the marketplace to cover ten categories of "essential health benefits," including ambulatory patient services, emergency services, hospitalization, pregnancy, maternity and newborn care, mental health and substance use disorder services, prescription drugs, rehabilitative services and devices, laboratory services, preventive and wellness services, chronic disease management, and pediatric services. 42 U.S.C. § 18022.

4

5

6

7

8

9

29.    The ACA and its implementing regulations also include certain prohibitions on health plans. Among others, an insurer may not impose any pre-existing condition exclusions. 42 U.S.C. § 300gg-3. Plans shall not apply any waiting period that exceeds 90 days. 42 U.S.C. § 300gg-7. And a health insurance issuer offering individual health insurance coverage may not establish any lifetime or annual limits on the dollar amount of essential health benefits for any individual, whether provided in-network or out-of-network. 45 C.F.R. § 147.126.

10

11

12

13

14

15

16

30.    The plans Defendants offered to Washington consumers did not meet these requirements. For example, ASH's hospital coverage had exceptions for pre-existing conditions, such as pregnancy and a broader exclusion of "bills for

17

18

19

20

CLASS ACTION COMPLAINT - 8

1    that pregnancy" if member was pregnant at the time of enrollment. ASH also

2    imposed excessive waiting periods for colonoscopies, hospital expenses, and

3    surgical expenses, among other things. And ASH imposed annual and lifetime

4    sharing limits for hospital charges.

5        31.    The plans Defendants offered to Washington consumers also failed

6    to comply with requirements Washington imposes above and beyond those

7    required under the ACA. For example, health plans sold in Washington cannot

8    deny coverage of an injury only because it was sustained while intoxicated or

9    under the influence of a narcotic. RCW 48.21.125. ASH, however, limited or

10   excluded the sharing of medical needs when illegal drugs or use of alcohol are a

11   contributing factor. Health plans must provide coverage for all prescription and

12   over-the-counter contraceptive drugs, devices and products approved by the FDA

13   without requiring copayments, deductibles, or cost sharing. RCW 48.43.072. ASH,

14   however, would not cover contraceptives or birth control expenses except for

15   "oral, generic birth control." And while Washington requires health plans to cover

16   mental health services the same way they cover medical and surgical services

17   (RCW 48.44.341), ASH's coverage was limited to emergency room bills incurred to

18   physically stabilize the patient.

19

20

1

<u>Defendants misrepresented ASH as a Health Care Service Ministry
to avoid ACA and state insurance requirements</u>.

2

3

32.    On May 21, 2019, the Washington Office of the Insurance

Commissioner (OIC) launched a formal investigation into whether ASH was

4

operating as an insurer in Washington and, if so, whether it fell within an

5

exemption under the ACA for Health Care Service Ministries.

6

33.    A company that meets the definition of a "Health Care Service

7

Ministry" or "HCSM" is not considered an insurer under Washington law and is

8

not required to comply with Washington laws governing insurers. RCW 48.43.009.

9

34.    To invoke this exception, an entity must meet the federal definition

10

of HCSM. *See* RCW 48.43.009 ("For purposes of this section, 'health care sharing

11

ministry' has the same meaning as in 26 U.S.C. Sec. 5000A."). Under federal law,

12

an entity or a predecessor of the entity must, among other requirements, have

13

"been in existence at all times since December 31, 1999, and medical expenses of

14

its members have been shared continuously and without interruption since at

15

least December 31, 1999." 26 U.S.C. § 5000A(d)(2)(B)(IV).

16

35.    ASH does not meet this requirement. Neither ASH, nor a predecessor

17

entity of ASH, has "been in existence at all times since December 31, 1999."

18

Neither ASH, nor a predecessor entity of ASH, has shared medical expenses

19

20

1    "continuously and without interruptions since at least December 31, 1999."

2        36.    Although ASH does not meet the statutory requirements, Defendants

3    falsely represented, and continue to represent, ASH as an HCSM.

4        37.    When confronted by the OIC, ASH did not deny that it failed to meet

5    the statutory definition of an HCSM.

6    <u>Defendants bootstrapped ASH onto an existing African ministry in a futile effort
     to cure the failure to comply with the requirements for HCSMs.</u>

7

8        38.    Near the end of the OIC's investigation and in hopes of curing its

     unlawful behavior, ASH claimed Bible Army International Church (BAIC) as its
9
     predecessor. BAIC is a church that was created in Ethiopia in 1996 in response to
10
     the outbreak of HIV.
11
         39.    ASH based this claim on a "Predecessor Agreement and Conjoining"
12
     entered between ASH and BAIC. The Predecessor Agreement states the parties
13
     intend to "conjoin ASH members to BAIC as a predecessor ministry to ASH, whose
14
     purpose it is to share in health care needs through medical missions, with BAIC
15
     having a nonprofit inception date of February 26, 1995." Additionally, the
16
     agreement states "ASH seeks to join its members via a monthly membership fee
17
     and adoption of ASH Statement of Standard to BAIC." Finally, the Agreement
18
     purports to provide ASH members with "grandfather" status under the Affordable
19

20

1    Care Act and allow "ASH to meet the federal criteria of the various Safe Harbor

2    Provisions through a "predecessor" relationship with BAIC."

3          40.    The Predecessor Agreement does not establish that BAIC is a

4    "predecessor" to ASH under the requirements of RCW 48.43.009 and 26 U.S.C.

5    § 5000A(d)(2)(B)(ii). A predecessor is "[a]n organization whose activities or assets

6    were taken over by another organization." *See* IRS's Form 1023 Instructions. An

7    organization that does not have a predecessor is not a successor. In its 2018

8    application for nonprofit status to the Internal Revenue Service, ASH represented

9    it was not a successor to another organization. ASH did not acquire BAIC, and the

10   entities did not merge. They remain distinct entities.

11         41.    Similarly, the Predecessor Agreement does not establish that ASH has

12   shared the medical expenses of its members continuously and without

13   interruption since December 31, 1999, another requirement of RCW 48.43.009

14   and 26 U.S.C. § 5000A(d)(2)(B)(ii). This is an impossibility, as ASH did not form

15   until 2017 and did not have any members until 2019.

16         Washington found that ASH is not an HCSM and was not authorized to offer
             insurance plans and that SHA is an unlicensed insurance producer.

17         42.    The OIC's investigation determined that ASH did not meet the

18   statutory definition of an HCSM under Washington or federal law and that ASH

19

20

1  operated as an unauthorized insurer in Washington in violation of RCW

2  48.01.040, RCW 48.01.050 and RCW 48.05.030.

3      43.    The OIC's investigation also determined that SHA acted as an

4  insurance producer without a license in violation of RCW 48.17.060(1). During the

5  OIC investigation, an SHA representative solicited the OIC investigator to purchase

6  ASH plans. But SHA did not have a license or registration to transact the business

7  of insurance in Washington.

8      44.    On April 22, 2020, the OIC issued ASH an "Order to Cease and

9  Desist." This order required ASH to immediately cease and desist from:

10         A.    Acting as an insurer in the state of Washington;

11         B.    Acting as a health care service contractor in the state of

12               Washington;

13         C.    Engaging in or transacting the unauthorized business of

14               insurance in the state of Washington;

15         D.    Seeking, pursuing, and obtaining any insurance business in the

16               state of Washington;

17         E.    Soliciting Washington residents to purchase any insurance to

18               be issued by an unauthorized insurer; and

19

20

CLASS ACTION COMPLAINT - 13

1           F.      Soliciting Washington residents to induce them to purchase

2                   any insurance contract.

3       45.     A year later, on April 21, 2021, the OIC issued SHA an "Order to Cease

4  and Desist and Imposing Fine."

5       46.     On July 7, 2021, the OIC issued "Consent Orders" against ASH and

6  SHA. ASH was ordered to cease and desist from further insurance transactions in

7  Washington and to terminate all existing ASH plans by the end of 2021. SHA was

8  prohibited from conducting the business of insurance in Washington without

9  proper authorization, licensure, or registration from the Insurance Commissioner.

10  Defendants sold Plaintiff a sham plan that did not provide the benefits promised.

11      47.     Plaintiff Martin Bandy enrolled in an ASH healthcare plan on April 24,

12  2020—two days *after* OIC ordered ASH to stop selling healthcare plans in

13  Washington.

14      48.     Mr. Bandy paid a one-time enrollment fee of $125. In addition, his

15  monthly premium payments were approximately $355.50 per month.

16      49.     Mr. Bandy received what he believed was an insurance card from

17  ASH. The insurance card "certified" Mr. Bandy's membership in a "Health Care

18  Sharing" community even though ASH has not been certified by any government

19  agency as an HCSM.

20

CLASS ACTION COMPLAINT - 14

1    50.    On June 1, 2021, Mr. Bandy went to the emergency room after

2    experiencing symptoms of a stroke and was admitted to the hospital. While in the

3    emergency room and hospital, he received extensive care.

4    51.    Defendants denied Mr. Bandy's claims for coverage of the emergency

5    room services he received.

6    52.    Defendants also denied Mr. Bandy's claims for coverage of services

7    he received in the hospital, where he stayed overnight.

8    53.    The health plan sold to Mr. Bandy was insurance under Washington

9    law, but the plan failed to comply with Washington and federal law in its

10    provisions of benefits. Had Defendants complied with Washington and federal

11    law, they could not refuse to cover the emergency room or hospital services he

12    received.

13    54.    Mr. Bandy has been forced to pay out-of-pocket for services he

14    understood would be covered by ASH.

15    55.    Mr. Bandy continues to pay toward these debts, which exceed

16    $40,000.

17            Defendants sold sham plans to more than 3,000 Washingtonians.

18    56.    Mr. Bandy is not alone. OIC determined through its investigation that

19    ASH acted as an insurer at least 3,776 times in Washington, and Washington

20

CLASS ACTION COMPLAINT - 15

1    consumers paid at least $2,570,170.27 to be ASH members.

2          57.    OIC received complaints by many other Washington residents who

3    were duped by Defendants. Several purchased ASH's plans through online

4    marketplaces advertising health insurance.

5          58.    One consumer who purchased an ASH plan complained that ASH

6    refused to cover a January 2021 emergency room visit for a serious atrial

7    fibrillation issue. As a result, the consumer faces a bill of $22,347.

8          59.    A second consumer complained that ASH refused to pay for

9    emergency gallbladder surgery in August 2020. She told OIC: "They deceived me

10   completely." She also said she had no idea she had signed up for an "alternative"

11   insurance. Her bills have since gone to collections.

12         60.    A third consumer purchased an ASH plan, which he believed was

13   insurance, just weeks before the OIC issued the Cease and Desist Order to ASH. In

14   September 2020, he was hospitalized. His claims were submitted to ASH, but ASH

15   refused to pay.

16         61.    A fourth consumer purchased an ASH plan she believed was

17   insurance. When she received the ASH "insurance" card in the mail, it said it was

18   'NOT INSURANCE" but a religious health care sharing program. She called and was

19   assured that the language was just "boiler plate" and that she was fully insured

20

and covered for everything but alcohol and drug rehabilitation. She specifically

asked to verify that her doctors were in the "Provider Network," and was told

they were. Despite these representations, she received billing statements from

her doctors for $16,285.72. Defendants refused coverage, claiming she had a pre-

existing condition.

62.    A fifth consumer purchased an ASH plan through a broker after doing

extensive research. The consumer obtained prior authorization from ASH to have

hip surgery. After he completed the surgery and racked up more than $90,000 in

medical bills, ASH claimed there was a two-year waiting period for the surgery,

and denied payment for the surgery as involving a pre-existing condition.

63.    A sixth consumer had surgery in May 2020 and could not get ASH to

communicate with her or her healthcare provider or to provide any explanation of

benefits or sharing. At the time she complained to OIC, the consumer had no idea

whether she would be held responsible for the costs of her surgery.

64.    A seventh consumer complained that the plan she purchased

through ASH and thought was health insurance did not cover what she was told it

would cover. She purchased the healthcare plan through a broker after she'd

completed online surveys seeking health insurance. The broker assured her that

ASH would cover two specific medications for which she needed coverage, along

1   with visits to her doctor. Almost immediately after purchasing the policy and

2   paying the monthly contribution, the consumer was told her visits would not be

3   covered by the plan, and she discovered her prescriptions weren't covered either.

4        65.    An eighth consumer complained: "This company refuses to pay my

5   hospital and medical bills. I have been given a constant string of excuses as to why

6   and have proven to them, with written documentation, that there is no basis for

7   refusing to pay. Now when I call they just simply hang up on me."

8        66.    A ninth consumer wrote: "After speaking with a broker with whom I

9   made it clear I needed an insurance plan, I was signed up with this company. It

10  was not until some weeks after I had paid them that I received paperwork and a

11  card. On the card in minuscule writing it states that this is not an insurance plan. I

12  went with it because I needed coverage for my medication. My broker said they

13  could cover my current psychiatrist and my medication. It turns out that was

14  false. ASH gave me instructions on where to find another doctor but withheld the

15  fact that they don't cover mental health at all." This consumer canceled the ASH

16  plan and tried, without success, to get a refund.

17       67.    A tenth consumer wrote: "I responded to a [sic] add on the internet

18  for insurance for my wife during open entollment [sic]. It sounded like good

19  coverage at a lower cost than the Kaiser plan she had. I was not told this is a cost

20

share program and that much of the coverage is parceled out to other companies. Two days later companies I never heard of were welcoming us to thier [sic] coverage and funds began to be taken out of my account. This was not the kind of coverage I wanted and tried to call and cancel. No one answered to [sic] I left a message to be contacted about cancling [sic] the policy. No response. I left several messages for many days with no response. On Nov. 4 I was able to reach a person and explained that I had been trying to cancel for a month. The man said he understood and would cancel the policy and apologized for no one getting back to me. He assured me that all monies would be refunded. A total of $877.32 has been taken out of my account and only $145.00 has been refunded."

68.    Yet another consumer wrote: "I was shopping for health insurance yesterday I received a call from Olympia WA I thought I was led to believe I was buying health insurance. I was told he was Insurance agent. I was told month to month. Believing he was from the state approved marketplace I gave him my bank information, signed a digital contract gave him my ssn. I received no copies of the contract, tonight I received documents stating I was now a member of a religious based medical share plan. I tried calling the numbers the line is disconnected shortly after pressing number. It also hangs up with no beep. My email was bounced back. I tried to call agents number it disconnects. I want them

1  to cancel whatever membership this is, it's not what I was told it was. I am

2  recently widowed and my job ended due to store closing. I feel like I was

3  scammed and now they have all my information."

4  ## V.    CLASS ALLEGATIONS

5  69.    Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of

6  himself and all persons similarly situated. The proposed class is defined as follows:

7      All Washington residents who contributed to plans from
    or through Alliance for Share Health, Shared Health

8      Alliance, or a subsidiary of either, that purported to be
    "health care sharing" plans at any time between January

9      1, 2019 and December 31, 2021.

10  70.    The members of each class are so numerous that joinder of all of

11  them is impracticable. Based on the OIC investigation, the class exceeds 3,000

12  persons.

13  71.    There are issues of law and fact common to all class members,

14  including: (1) whether the healthcare plans that Defendants marketed and sold to

15  class members met the legal requirements of an HCSM under 26 U.S.C. § 5000A

16  and RCW 48.43.009; (2) whether Washington insurance law and regulations

17  forbid the marketing and sale of healthcare products in the "business of

18  insurance" without authorization or other legal exception; (3) whether

19  Defendants failed to obtain proper authorization for the marketing and sale of an

20

insurance product in Washington; (4) whether class members are entitled to (a) rescission of their plans and refunds of all premiums paid and/or (b) reformation of the plans to comply with the minimum insurance coverage requirements of Washington and federal law and processing of all claims for expenses and costs incurred that would have been covered had the plan(s) properly complied with those laws; (5) whether Defendants' actions were unfair and/or deceptive under the Washington Consumer Protection Act; and (6) whether class members are entitled to other damages, including statutory treble damages, resulting from Defendants' unfair and/or deceptive acts.

72.    The claims of the named Plaintiff are typical of the claims of class members because Plaintiff and class members were subject to the same unlawful acts and practices.

73.    The named Plaintiff and his counsel will fairly and adequately represent the interests of the class.

74.    The common questions of law and fact predominate over any questions affecting only individual class members. The predominant questions of law or fact are clear, precise, well-defined, and applicable to the named Plaintiff as well as every absent member of the class.

1    75.    A class action is superior in this case for several reasons, including

2    but not limited to the following: the case challenges uniform unfair and deceptive

3    practices; some class members may not have the motivation or resources to bring

4    their claims individually; and it would be an inefficient use of scarce judicial

5    resources to require each individual affected by the practices challenged herein to

6    bring his or her own individual claim.

7                                **COUNT I**

8                             **ILLEGAL CONTRACT**

9    76.    Plaintiff realleges all prior allegations as though fully stated herein.

10    77.    "Insurance" is "a contract whereby one undertakes to indemnify

11    another or pay a specified amount upon determinable contingencies." RCW

12    48.01.040.

13    78.    In Washington, the essential elements of an insurance contract

14    include: (1) an insurer; (2) an insured or beneficiary; (3) a premium payment and

15    (4) a loss or injury to be protected against. *State ex rel. Fishback v. Globe Casket &*

16    *Undertaking Co.*, 82 Wn. 124, 128, 143 P. 878, 879 (1914).

17    79.    ASH is an insurer who contracted to provide health insurance to

18    Plaintiff and the class. Defendants' portrayal of ASH as a "health sharing ministry"

19    is immaterial. "No one can change the nature of insurance business by declaring

20

1   in the contract that it is not insurance." *McCarty v. King Cty. Med. Serv. Corp*., 26

2   Wn.2d 660, 679, 175 P.2d 653, 663 (1946) (citation omitted). "The name that the

3   parties give to the relationship is not determinative." *Id*.

4       80.    Where the primary purpose of the business is the "collection of fees

5   or premiums" from members "in consideration" for the provision of "service to

6   members," it "performs the functions of an insurer." *McCarty,* 26 Wn.2d at 680.

7   That is exactly what occurred here. Plaintiff and class members are the "insureds"

8   who paid premiums or monthly "contributions" to ASH, the "insurer," with the

9   expectation that future health benefits would be covered under the guidelines.

10      81.    The features of ASH's healthcare plans are indistinguishable from the

11  features of genuine health insurance: (a) the plans are marketed as providing

12  payment benefits for specified health-related contingencies in exchange for a

13  monthly payment, and the benefit amounts are tied to the amount of the

14  monthly premium and cost incurred; (b) the healthcare plans charge "members" a

15  "monthly contribution"; (c) the plans require a member to pay a deductible,

16  called a "Member Responsibility Amount" or "MRA"; (d) after the MRA is paid,

17  medical bills are paid in accordance with the plan's guidelines; (e) the plans

18  purport to provide coverage for medical expenses, including for primary care

19  visits, specialist visits, hospitalization, prescription drugs, preventive care, and

20

CLASS ACTION COMPLAINT - 23

1   urgent care; (f) members are issued ID cards and urged to "[g]ive providers your

2   ASH membership card if they ask for proof of insurance"; and (g) payments for

3   covered eligible medical expenses are made by Defendants directly to providers.

4       82.    All entities that sell products in Washington meeting the definition of

5   insurance must obtain a certificate of authorization. RCW 48.05.030. Neither

6   Defendant obtained such a certificate from the Insurance Commissioner.

7   Defendants were not authorized to sell healthcare plans.

8       83.    Defendants are not exempt from the requirements Washington

9   imposes on insurers because Defendants do not meet the requirements of an

10  HCSM.

11      84.    Defendants marketed and sold unauthorized health insurance plans

12  to Plaintiff and class members in violation of Washington law.

13      85.    Plaintiff and all members of the proposed class are entitled to either

14  (a) rescission of the illegal contracts and return of the insurance premiums paid;

15  or (b) reformation of the illegal contracts to comply with the mandatory minimum

16  benefits and coverage required under Washington law.

17

18

19

20

**COUNT II**

**WASHINGTON CONSUMER PROTECTION ACT**

**DECEPTIVE BUSINESS PRACTICES**

86.    Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

87.    Plaintiff and class members are "persons" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(1).

88.    Defendants are "persons" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(1).

89.    Defendants engaged in a common course of deceptive conduct in violation of RCW 19.86.020. Examples of Defendants' deceptive conduct include:

(a)    Defendants advertised and represented that ASH is an HCSM. This is false and/or misleading because ASH has not "been in existence at all times since December 31, 1999, and medical expenses of its members have been shared continuously and without interruption since at least December 31, 1999." 26 U.S.C. § 5000A(d)(2)(B)(IV); RCW 48.43.009. It is not, as a matter of law, an HCSM; and

(b)    Defendants' advertisements and solicitations deceived or misled, or had the capacity to deceive or mislead, members of the class into believing they

CLASS ACTION COMPLAINT - 25

were purchasing authorized health insurance. The look and feel of the advertising

material suggested that the plans were health insurance. Defendants used

insurance cards, PPO networks, guidelines that detail benefits, plan levels, and

health insurance language to create the impression they were offering real health

insurance benefits.

90.    Defendants' common course of deceptive conduct in violation of

RCW 19.86.020 has caused substantial injury to consumers.

91.    Defendants' common course of deceptive conduct occurred in trade

or commerce and impacted the public interest because Defendants are in the

business of marketing and selling healthcare plans to thousands of consumers in

Washington, and thousands of Washingtonians have been affected by

Defendants' deceptive practices.

92.    Defendants' common course of deceptive conduct caused injury to

the business or property of Plaintiff and class members.

93.    Plaintiff and class members have been damaged in amounts to be

determined at trial and under RCW 19.86.090. Plaintiff and the class are entitled

to recover such damages, including interest thereon, as well as treble damages,

attorneys' fees, and costs.

1

**COUNT III**

2

**WASHINGTON CONSUMER PROTECTION ACT**

3

**UNFAIR BUSINESS PRACTICES**

4      94.    Plaintiff hereby incorporates by reference each of the preceding

5    allegations as though fully set forth herein.

6      95.    Plaintiff and class members are "persons" within the meaning of the

7    Washington Consumer Protection Act, RCW 19.86.010(1).

8      96.    Defendants are "persons" within the meaning of the Washington

9    Consumer Protection Act, RCW 19.86.010(1).

10     97.    Defendants engaged in a common course of unfair course of conduct

11   in violation of RCW 19.86.020. Examples of Defendants' unfair conduct include:

12     (a)    Defendants purported to exclude certain pre-existing conditions even

13   though such exclusions are illegal under the ACA and Washington law.

14     (b)    Defendants purported to impose waiting periods even though such

15   waiting periods are illegal under the ACA Washington law.

16     (c)    Defendants failed to provide coverage for treatments and conditions

17   that are mandated "essential" benefits under the ACA and Washington law.

18     (d)    Defendants imposed lifetime caps and limits on coverage that are

19   illegal under the ACA and Washington law.

20

CLASS ACTION COMPLAINT - 27

1    (e)    Defendants imposed annual caps and limits on coverage that are

2    illegal under the ACA and Washington law.

3    (f)    Defendants were not licensed in the State of Washington, yet they

4    marketed and sold insurance plans to Plaintiff and class members.

5    98.    Defendants' common course of unfair conduct in violation of RCW

6    19.86.020 caused substantial injury to consumers that was not reasonably

7    avoidable nor outweighed by countervailing benefits to consumers or to

8    competition.

9    99.    Defendants' common course of unfair conduct occurred in trade or

10    commerce and impacted the public interest because Defendants are in the

11    business of marketing and selling healthcare plans to thousands of consumers in

12    Washington. Thousands of Washingtonians have been affected by Defendants'

13    unfair acts and practices.

14    100.    Defendants' common course of unfair conduct caused injury to the

15    business or property of Plaintiff and class members.

16    101.    Plaintiff and class members have been damaged in amounts to be

17    determined at trial and under RCW 19.86.090. Plaintiff and the class are entitled

18    to recover such damages, including interest thereon, as well as treble damages,

19    attorneys' fees, and costs.

20

## VI.    JURY DEMAND

Plaintiff requests a trial by jury on all the claims.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A.    Certify that this action may proceed as a class action;

B.    Designate Mr. Bandy as class representatives and designate Toby J. Marshall and Adrienne D. McEntee, Terrell Marshall Law Group PLLC, and Eric S. Chavez, Axion Law Group, PLLC as class counsel;

C.    Declare that Defendants' unauthorized health insurance plans were illegal contracts;

D.    Declare that Defendants' actions violated the Washington Consumer Protection Act;

E.    Order Defendants to (a) rescind the unauthorized health insurance plans and refund all premiums improperly received from members of the proposed class, including interest; or, at the option of any class member (b) reform the unauthorized health insurance plans to comply with the minimum mandatory benefits required under the relevant state insurance code and federal law, permit class members to submit claims for medical services, costs and other expenses that would have been covered;

CLASS ACTION COMPLAINT - 29

F.      Order payment of all other expenses causally related to Defendants'
unfair and/or deceptive acts;

G.      Order treble damages up to $25,000 for each CPA violation;

H.      Order payment of reasonable attorneys' fees; and

I.       Order any other relief to which the employees may be entitled.

RESPECTFULLY SUBMITTED AND DATED this 17th day of February, 2022.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Toby J. Marshall, WSBA #32726
    Toby J. Marshall, WSBA #32726
    Adrienne D. McEntee, WSBA #34061
    Attorneys for Plaintiff and the Proposed Class
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450
    Email: tmarshall@terrellmarshall.com
    Email: amcentee@terrellmarshall.com

AXION LAW GROUP, PLLC

By: /s/ Eric S. Chavez, WSBA #41676
    Eric S. Chavez, WSBA #41676
    Attorneys for Plaintiff and the Proposed Class
    1102 A St, Suite 300-36
    Tacoma, Washington 98402
    Telephone: (253) 339-8500
    Facsimile: (253) 993-4058
    Email: eric@axion-law.com

CLASS ACTION COMPLAINT - 30