FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 16, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARTIN BANDY,<br><br>              Plaintiff,<br><br>v.<br><br>ALLIANCE FOR SHARED HEALTH, INC., and CHRISTIAN DISCOUNT ALLIANCE, LLC d/b/a SHARED HEALTH ALLIANCE,<br><br>              Defendants. | No.   2:22-cv-00025-SMJ<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** |

Before the Court are Defendant Alliance for Shared Health Inc.'s Motion to Dismiss, ECF No. 15, and Defendant Christian Discount Alliance's Motion to Dismiss, ECF No. 18. On August 23, 2022, the Court heard argument from the parties on the motions and reserved judgment. After reviewing the motions and the file, the Court is fully informed and grants in part and denies in part each of the motions. The Court declines to dismiss Plaintiff's claims in full but agrees that Plaintiff's deceptive practices claim sounds in fraud but fails to meet Federal Rule of Civil Procedure 9(b) heightened pleading standard. As such, that claim is dismissed with leave to replead.

//

ORDER RULING ON DEFENDANTS' MOTIONS TO DISMISS – 1

# BACKGROUND

Plaintiff Martin Bandy brings this class action under the Washington Consumer Protection Act (CPA), WASH. REV. CODE §19.86, and contract law, against Defendants Alliance for Shared Health, Inc. (ASH), and Christian Discount Alliance, LLC d/b/a Shared Health Alliance (SHA), on behalf of himself and other Washington consumers who were allegedly marketed and sold unauthorized health insurance plans that were deceptively marketed as being offered by a Health Care Sharing Ministry in Washington by Defendants. ECF No. 1 at 1–2.

Plaintiff enrolled in an ASH healthcare plan on April 24, 2020, paying a $125 one-time enrollment fee and a monthly premium of approximately $355.50. *Id.* at 14. Once enrolled, Plaintiff received what he believed was an insurance card from ASH. *Id.* The insurance card purportedly certified Plaintiff's membership in a "Health Care Sharing" community. *Id.* In June 2021, after experiencing symptoms of a stroke, Plaintiff received care at the emergency room and was admitted to the hospital, where he continued to receive extensive care. *Id.* at 15. When Plaintiff tried to have these costs covered by what he believed was his insurance, Defendants denied Plaintiff's claims for coverage of services in the emergency room and during his overnight stay at the hospital. *Id.*. The complaint alleges Plaintiff was forced to pay out-of-pocket for services he believed would be covered by ASH, and now has more than $40,000 in medical debt, which he continues to pay. *Id.*

ORDER RULING ON DEFENDANTS' MOTIONS TO DISMISS – 2

Plaintiff alleges Defendants entered into illegal contracts and engaged in unfair and deceptive business practices by illegally acting as insurers and selling sham plans to more than 3,000 Washingtonians in violation of contract law and the Washington CPA. *Id.* at 1, 15. Defendants both now move to dismiss this action. *See generally* ECF Nos. 15, 18. Defendant ASH argues Plaintiff's three claims should be dismissed as (1) the illegal contract claim fails because Plaintiff has not—and cannot—establish the plan as an insurance contract, (2) Plaintiff cannot state a claim for unfair business practices, as ASH's disclosures bar this claim, and (3) the deceptive business practices claim is deficient because it does not comply with Rule 9(b). ECF No. 15 at 6. Defendant SHA argues Plaintiff's claims should be dismissed because (1) Plaintiff did not have a contract with SHA, and (2) Plaintiff cannot sue under the CPA because he never interacted with or had a relationship with SHA. ECF No. 18 at 1–2.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss the complaint if it "fail[s] to state a claim upon which relief can be granted."

In deciding a Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to the plaintiff and draws all reasonable inferences in the

ORDER RULING ON DEFENDANTS' MOTIONS TO DISMISS – 3

plaintiff's favor. *Ass'n for L.A. Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011). Thus, the Court must accept all factual allegations contained in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the Court may disregard legal conclusions couched as factual allegations. *See id.*

To survive a Rule 12(b)(6) motion, the complaint must contain "some viable legal theory" and provide "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 562 (2007) (internal quotation marks and ellipsis omitted). While the complaint need not contain detailed factual allegations, threadbare recitals of a cause of action's elements, supported only by conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 663. Thus, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists where the complaint pleads facts permitting a reasonable inference that the defendant is liable to the plaintiff for the misconduct alleged. *Id.* Plausibility does not require probability but demands more than a mere possibility of liability. *Id.* Whether the complaint states a facially plausible claim for relief is a context-specific inquiry requiring the Court to draw from its judicial experience and common sense. *Id.* at 679.

//

ORDER RULING ON DEFENDANTS' MOTIONS TO DISMISS – 4

While a court generally does not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss, there are certain exceptions. Relevant here, the Court may consider documents incorporated by reference in the complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis for the plaintiff's claim." *Id.* "In other words, a court 'may consider a document the authentic of which is not contested, and upon which the plaintiff's complaint necessarily relies.'" *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1064 (S.D. Cal. 2018) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statue on other grounds in Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006)). In this case, the Court relies on ASH's Membership Guidelines, ECF No. 15-2, as they are repeatedly cited and quoted in the Complaint and form the basis of Plaintiff's claims.

**DISCUSSION**

**A.    The Illegal Contract Claim**

Plaintiff alleges that the insurance plans he and other Washingtonians entered with Defendants are illegal contracts because Defendants were not authorized to issue health insurance in Washington. ECF No. 24. Any entity that sells insurance as defined by Washington law must obtain a certification of authorization from the

ORDER RULING ON DEFENDANTS' MOTIONS TO DISMISS – 5

State, or else the issued insurance is illegal. WASH. REV. CODE §48.05.030 (2022). As defined, insurance is "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." WASH. REV. CODE §48.01.040 (2022).

Defendants have provided two general arguments against Plaintiff's common law claim for illegal contract. First, that ASH is a Health Care Sharing Ministry (HCSM) and is therefore exempt form more onerous state and federal insurance laws, and second, that even if ASH is not an HCSM, Plaintiff's allegations do not support a claim that the plans at issue are insurance. Neither of these arguments prove persuasive; the Court addresses each in turn.

**1.     Health Care Sharing Ministry**

The Court must first determine whether ASH is a valid HCSM. If an organization qualifies as a Health Care Sharing Ministry (HCSM), it can sell health plans in Washington that provide fewer benefits than Washington law or the ACA require. *See* WASH. REV. CODE §48.43.009 (2022). "If an entity meets the federal requirements of an HCSM, it then qualifies as an HCSM under Washington law, and is exempt from obtaining a certificate of authority from the Washington Insurance Commissioner." *Jackson v. Aliera Co.*, 462 F. Supp. 3d 1129,1132 (W.D. Wash. 2020). To qualify as an HCSM, an organization must meet the five

requirements set forth in 26 U.S.C. § 5000A(d)(2)(B)(ii). An HCSM must be an entity:

> (I) which is described in section 501(c)(3) and is exempt from taxation under section 501(a),
> (II) [whose] members of which share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs and without regard to the State in which a member resides or is employed,
> (III) [whose] members of which retain membership even after they develop a medical condition,
> (IV) which (or a predecessor of which) has been in existence at all times since December 31, 1999, and medical expenses of its members have been shared continuously and without interruption since at least December 31, 1999, and
> (V) which conducts an annual audit which is performed by an independent certified public accounting firm in accordance with generally accepted accounting principles and which is made available to the public upon request.

26 U.S.C. § 5000A(d)(2)(B) 4. But an entity that fails to qualify as an HCSM and operates without a certificate of authority is an unauthorized insurer and any plans an unauthorized insurer markets or sells are illegal plans. WASH. REV. CODE §§ 48.01.04, 48.01.050, 48.05.030 (2022).

Taking the plausible allegations as true, Plaintiff has sufficiently alleged that ASH is not a valid HCSM. Plaintiff alleges that ASH did not form until 2017 and did not attain 501(c)(3) status until 2019. ECF No. 1 at 4, 12. Given this, Plaintiff has plausibly alleged that ASH does not meet the fourth requirement for HCSM status that the HCSM be in continuous existence since 1999 and have shared

ORDER RULING ON DEFENDANTS' MOTIONS TO DISMISS – 7

medical expenses "continuously and without interrupts" since that time. 26 U.S.C. § 5000A(d)(2)(B)(ii)(IV).

Although ASH argues that it is a continuation of the entity known as the Bible Army International Church (BAIC) which has been operating since or before 1999, Plaintiff provides plausible reason to doubt this claim. *See* ECF No. 1 at 11–12. Plaintiff alleges the Washington Office of the Insurance Commissioner (OIC) launched a formal investigation into ASH in May 2019, shortly after the IRS afforded it 501(c)(3) status. *Id.* at 4, 10. The OIC's investigation ultimately determined (1) that ASH did not qualify as an HCSM under state or federal law, (2) that ASH operated as an unauthorized health insurer, and (3) that SHA acted as an insurance producer without a license. *Id.* at 12–13. Accordingly, the OIC issued ASH and SHA cease and desist orders and eventually issued consent orders against ASH and SHA. *Id.* at 13–14. In one order, ASH was ordered to cease and desist from further insurance transactions in Washington and to terminate all existing ASH plans by the end of 2021. *Id.* at 14. Two days later, Plaintiff enrolled in an ASH healthcare plan.

Plaintiff also notes that the Predecessor Agreement between ASH and BAIC did not establish ASH as a successor of BAIC, noting that in ASH's 2018 application for nonprofit status to the Internal Revenue Service (IRS), "ASH represented it was not a successor to another organization. ASH did not acquire

ORDER RULING ON DEFENDANTS' MOTIONS TO DISMISS – 8

BAIC, and the entities did not merge. They remain distinct entities." *Id.* at 12. As such, disposition on this contested issue is inappropriate at the motion-to-dismiss stage.

### 2.    Health Plans as Insurance Contracts

Defendants next argue that dismissal is appropriate because ASH's plan, as alleged, does not qualify as insurance under Washington law. As mentioned above, "[i]nsurance is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." WASH. REV. CODE §48.01.040 (2022). The essential elements of an insurance contract include: (1) an insurer; (2) an insured or beneficiary; (3) a premium payment and (4) a loss or injury to be protected against. *State ex rel. Fishback v. Globe Casket & Undertaking Co.*, 82 Wn. 124, 128 (1914).

Looking to the provided Member Guidelines and taking Plaintiff's plausible allegations as true, the Court finds that ASH's health plans meet these elements. ASH shares 100 percent of bills for any medical incident exceeding the Member Responsibility Amount or "MRA" up to the annual sharing maximum, as long as all other Guidelines are met. ECF No. 15-2 at 9. The MRA is a deductible which must be paid to obtain benefits. ECF No. 1 at 7. After the MRA is satisfied, medical bills are paid in accordance with schedules set forth in the plan's Guidelines. *Id.* at 23. The plans require "members" to pay a "monthly contribution." *Id.* Failure to pay

this monthly fee gives ASH the right to "automatically cancel the membership." *Id.* at 7. In return for this monthly fee, ASH, as stated above, allegedly shares 100 percent of bills. ECF No. 15-2 at 9. And, finally, the plans are accompanied by the indicia of insurance: members are issued ID cards that Defendants urge members to give providers "if they ask for proof of insurance." ECF No. 1 at 24. Because ASH provides a plan that shares 100 percent of bills to members, the Court finds Plaintiff has sufficiently pled ASH is an insurer; the "members" are the insured or beneficiaries; the "MRA" is a premium payment, and the plan provides a way to pay for loss or injuries, as set out in the schedules.

Although the Member Guidelines state that the health plans are not a form of "insurance," "[n]o one can change the nature of insurance business by declaring in the contract that it is not insurance." *McCarty v. King Cty. Med. Serv. Corp.*, 26 Wn.2d 660, 678 (1946). Here, given the language of the plans and the issued ID cards that are to be shown to providers upon request for insurance, the Complaint plausibly alleges that Defendants issued insurance. Regardless of how many disclaimers and attestations Defendants put forth, the content of the plans, as alleged, are virtually indistinguishable from those of a health insurance plan. As such, Plaintiff has met his burden at this stage, and the Court denies the motion to dismiss this claim.

//

ORDER RULING ON DEFENDANTS' MOTIONS TO DISMISS – 10

### B. Unfair Business Practices

To establish a claim under the Consumer Protection Act (CPA), a plaintiff must prove five elements: (1) an unfair or deceptive act or practice that (2) affects trade or commerce and (3) impacts the public interest, and (4) the plaintiff sustained damage to business or property that was (5) caused by the unfair or deceptive act or practice. *Keodalah v. Allstate Ins. Co.*, 194 Wn.2d 339, 349 (2019). All five elements must be established, and certain elements can be satisfied per se based on the violation of another statute. *Id.* at 350. For instance, the first two elements are established where a statute declares that a violation is a per se unfair trade practice, and the third element—that the violation impacts the public interest— also may be established per se based on a showing that a statue has been violated that contains a specific legislative declaration of public interest impact. *Id.* "By broadly prohibiting 'unfair or deceptive acts or practices in the conduct of any trade or commerce,' the legislature intended to provide sufficient flexibility to reach unfair or deceptive conduct that inventively evades regulation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 49 (2009).

Plaintiff alleges that because ASH's health plans are not licensed with the State of Washington and do not comply with the ACA or Washington law, Defendant engaged in unfair business practices under the CPA. ECF No. 1 at 27. The Complaint also alleges that Defendants' plans failed to provide coverage for

ORDER RULING ON DEFENDANTS' MOTIONS TO DISMISS – 11

treatments and conditions that are mandated "essential" benefits under the ACA and Washington law. *Id.* at 8, 27. Specifically, ASH's plans excluded coverage for pre-existing conditions, imposed waiting periods, annual and lifetime caps, and limits on coverage, all of which are prohibited by the ACA and Washington law. *Id.* Plaintiff alleges that Defendants' "common course of unfair conduct caused substantial injury to consumers," and "[t]housands of Washingtonians have been affected by Defendants' unfair practices" and that this conduct caused injury. *Id.* at 28.

Defendants argue that Plaintiff's CPA claim based on unfair business practices is barred because the Guidelines disclosed the alleged statutory violations that Plaintiff alleges are unfair. ECF No. 15 at 17. Defendants argue every alleged statutory violation is plainly disclosed to prospective members in the Guidelines, including limitations on sharing for pre-existing conditions, waiting periods, annual and lifetime caps on sharing, and ASH's lack of an insurance license. *Id.* at 14. Defendant argues that because the alleged violations are disclosed, there cannot be a claim for unfair business practices. *Id.* However, there is no support for this assertion. The only case Defendants point to involving the CPA is *Lowden v. T-Mobile USA, Inc.*, No. C05-1482 MJP, 2009 WL 537787 (W.D. Wash. Feb. 18, 2009), aff'd, 378 F. App'x 693 (9th Cir. 2010). *Lowden* is distinguishable. There, the plaintiff alleged that T–Mobile violated the CPA by assessing additional charges

ORDER RULING ON DEFENDANTS' MOTIONS TO DISMISS – 12

without disclosing them, but the court found that T-Mobile's contract adequately informed customers that they may be charged for regulatory costs imposed on T–Mobile. *Id.* at *2. Those disclosures, in contrast to those at issue here, were not alleged to be contrary to Washington law. *See id.* Instead, the Ninth Circuit addressed a valid, legal contract that included terms and disclosures that are permissible under Washington law.

Here, Plaintiff has sufficiently alleged that ASH's health plans were in violation of the ACA and Washington law, as ASH was plausibly not a valid HCSM and therefore was not exempt from obtaining a certificate of authority from the Washington Insurance Commission. Absent a certificate of authority, the health plans were illegal, WASH. REV. CODE §48.05.030 (2022) ("All entities that sell products in Washington meeting the definition of insurance must obtain a certificate of authorization."), and allegations of illegality satisfy the CPA's unfair practice element. *See, e.g.*, *Bess v. Ocwen Loan Servicing, LLC,* 727 F. App'x 918, 921 (9th Cir. 2018) ("By alleging Ocwen entered Bess's property pursuant to the unlawful entry provisions in the parties' deed of trust, Bess has plausibly alleged an unfair or deceptive practice"); *Wilson v. PTT, LLC*, 351 F. Supp. 3d 1325, 1339 (W.D. Wash. 2018) (denying motion to dismiss CPA claim based on allegation that defendant violated statutory prohibition on gambling). As such, the Court denies the motion to dismiss the unfair business practice theory of Plaintiff's CPA claim.

C.  **Deceptive Business Practices**

Next, Defendants argue that Plaintiff's CPA deceptive practices claim must be subjected to Rule 9(b)'s heightened pleading standard and, evaluating the claim under that standard, the claim must be dismissed. The Court agrees.

Under Rule 9(b), a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened standard applies so long as the claim is "grounded in fraud" or "sounded in fraud," even if fraud is not an essential element of claim alleged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 ("[I]n cases in which fraud is not an essential element of the claim, Rule 9(b) applies, but only to particular averments of fraud.").

Plaintiff argues his claim is based on deceptive conduct but is neither "grounded in fraud" nor does it "sound in fraud" because Plaintiff does not allege that Defendants intentionally engaged in a "unified course of fraudulent conduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). But a "unified course of fraudulent conduct" is virtually indistinguishable from Defendants' alleged "common course of deceptive conduct." *See* ECF No. 1 at 25. Plaintiff, in several places, alleges that he or members of the prospective class were misled by material misrepresentations about what were (insurance companies) and what they could offer (insurance), allegations that seemingly sound in fraud. ECF

ORDER RULING ON DEFENDANTS' MOTIONS TO DISMISS – 14

No. 1 at 25–26. As such, his *allegations*, as opposed to what he is required to prove in support of his claim, sound in fraud and the Court must subject the allegations to Rule 9(b)'s heightened pleading standard.

Even so, Plaintiff argues, regardless of whether Rule 9(b) is applicable, the Complaint would satisfy the rule because "it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Stellar J. Corp. v. Argonauts Ins. Co.*, No. 3:12–cv–05982 RBL, 2014 WL 3673301, at *2 (W.D. Wash. Jul. 23, 2014) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993)). For example, Plaintiff identified the communications that had the capacity to deceive and what they said (that ASH is an HCSM and that the plans were insurance); where the communications were promulgated (on SHA's website, through brokers, in ASH's Guidelines, and on membership cards); who saw or heard them (Plaintiff, consumers who complained to OIC, and OIC); how the communications were false, unfair, and deceptive (ASH does not meet the requirements of an HCSM and the health plans are not ACA-compliant); and the time period during which the alleged practice occurred (from 2019 to 2021). ECF No. 1 at 2, 5, 10–11, 13–14, 17–20, 25.

But Rule 9(b) requires greater specificity in pleading allegations that sound in fraud. Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the

ORDER RULING ON DEFENDANTS' MOTIONS TO DISMISS – 15

conduct] and why it is false." *Cafasso, ex rel. U.S. v. Gen. Dynamica C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Plaintiff's complaint lumped both Defendants, which is not "specific enough to give defendants notice of the particular misconduct… so that they can defend against the change and not just deny that they have done anything wrong." *Neubronner v. Miken*, 6 F.3d 666, 672 (9th Cir. 1993).

Despite this deficiency, the Court finds good cause to grant Plaintiff leave to amend his complaint. Under Federal Rule of Civil Procedure 15(a)(2), "[t]he [C]ourt should freely give leave when justice so requires." "In general, a court should liberally allow a party to amend its pleading*." Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (citing Fed. R. Civ. P. 15(a)). Still, the Court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of [Plaintiff], repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party, ... [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, there is no evidence of undue delay, bad faith, dilatory motive, failure to cure deficiencies, or futility of amendment, and when given the opportunity to address prejudice, ASH's counsel offered only that having a pending case against ASH that alleges deceptive practices is harmful to the organization.

ORDER RULING ON DEFENDANTS' MOTIONS TO DISMISS – 16

The mere fact that a company's reputation may be harmed by a deceptive practices claim filed against it is not enough for the Court to deny Plaintiff leave to amend his deceptive-practices claim.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' motions to dismiss, **ECF Nos. 15, 18**, are **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claim for deceptive business practices in violation of the Washington Consumer Protection Act, ECF No. 1 at 25–26, is **DISMISSED WITHOUT PREJUDICE**. Plaintiff's claims for illegal contract and unfair business practices in violation of the Washington Consumer Protection Act remain.

2. The Court **GRANTS** Plaintiff leave to file a first amended complaint **by no later than October 13, 2022**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 16th day of September 2022.

_____
SALVADOR MENDOZA, JR.
United States District Judge